Good morning, your honors. May it please the court, my name is Mark Poster on behalf of the appellant, Tom Stull. This is something completely different than what we've heard earlier this morning, a business dispute. And I have two main points that I'd like to make this morning. One has to do with the trial judge's finding on the meaning of the term interest. And the second point has to do with whether appellee Mr. Fox was entitled to attorney's fees from the partnership on account of this lawsuit. Was this agreement that they had blessed by a lawyer or prepared by a lawyer? No, no, your honor. It was totally, totally oral. Yeah. There's really nothing in writing at all. So they might not understand what we would ordinarily think the technical meaning of interest was? They might not, but these are businessmen, and I can – all of the testimony in this case talks about interest in a way that we commonly understand interest to be. When someone says I want 10 percent interest on my money, the common understanding of that is that you want interest running over time, not just a one-time 10 percent fee for my money. Wasn't there evidence in the record that could support either interpretation? Well, no. I've summarized, I think, all of the evidence in my brief. And I can go over – there's just three witnesses, and it's really short. Mr. Fox, who is the proponent of this one-time interpretation of 10 percent interest, in e-mails referred to it as 10 percent APR, which is – Some e-mails do, but other e-mails refer to it as a rental fee. Well, okay. Rental fee? Well, that's what interest is. It's – it is the cost for using money over time. As you – you pay rent for property. You don't pay one-time rent. You pay rent for the amount of time that you're on the property. You pay interest for the amount of time that the money is being used. So you're arguing to us that there's only one way that that term could have been understood by both of the parties? Well, yes, and – but also, if there's even a smidgen of evidence that would support the one-time fee argument, it's still clear error because of the implausibility of it and all of the other evidence that's involved in this case. My understanding of the clear error test is the finding of fact is clearly erroneous if it is implausible in light of the record viewed in its entirety or if the record contains no evidence to support it. And we contend it's both of those things. As I pointed out, Mr. Fox himself referred to 10 percent APR. He testified that Mr. Stahl wanted 10 percent on his money. He testified that when there were some contractors working on the project, they were running over time. And he told – he said that – he commented that they should impose a penalty on these contractors because Mr. Stahl was charging about $800 a day for the use of the money. So this is – this is interest that we're talking about. It's not a one-time fee. Mr. Stahl himself testified that the deal was after I get all my money back, including interest, there would be a sharing of profits. And Mr. Beer, the only other party – the only other – not a party, but the only other witness, testified that it was 10 percent interest on Mr. Stahl's money. And he talked about how he emailed Mr. Fox at one point and said that Mr. Stahl had invested more than $3 million in the project, including interest. And at trial, he talked about how Mr. Stahl had invested $5 million by that point in the project, including interest. He wasn't talking about the charge that he might get sometime if they ever – if the project ever was fulfilled and they might collect some money. He was talking about what it was costing Mr. Stahl to engage in this transaction. That was the money he was paying out and the interest that he was incurring on borrowing the money in order to put it into this project. So naturally, he would – he would think that he was going to get interest back over time, just as it was costing him interest over time to put an investment into the project. And, again, I've cited cases and just dictionary definitions and just common understanding of what the – of what the word – of what the word interest means. It's not a – it's not a mystical legal term, I suggest. It's something that everyday common sense tells us what interest means. It's what you pay over time for the use of money until it's paid back, and then you stop paying interest. You don't just pay a one-time fee and that's it. There's just no evidence here to support that. And even if there was, it's totally implausible in light of the whole record. Well, when he put this money into the so-called partnership, was he acquiring a share of interest or was he simply lending money? That would have some bearing on whether this was interest money. Well, he – it was a little kind of both. I mean, he was acquiring title to the property, which the judge then – Judge Reel found was he was a title for the partnership. But his part of the partnership deal was to put money into the project so that – because Mr. Fox didn't have enough money to do – to complete the – to complete his plan. So the deal was one person would put in the money. Another person would do sales and marketing. That was Mr. Fox. And the third person, Mr. Beer, would be the administrative guy and oversee construction and things like that. So I guess the answer to your question is he was putting money into the project. And everyone understood he would get his money back out with interest. That was the understanding. Well, I think the intent is quite up in the air, frankly. This is a messy record. Well, it's – as far as interest goes, I don't know how messy it is. There's – there isn't a lot of reference to interest in the record. And I respectfully submit that this one-time fee notion was something that just doesn't have support in the record. You know, there's something that's bothering me. I don't know if anybody's made this argument, but – so it's somewhat inconsistent. But, okay, Stahl testified that he did not want to make a loan to Fox but wanted to fund the project, right? That was his testimony? That's right. So then we have this provision of 16-401 partner accounts. And it says, a payment or advance made by – this is 16-401E. A payment or advance made by a partner that gives rise to a partnership obligation under C or D, which the Court found applicable, constitutes a loan to the partnership that accrues interest from the date of the payment or advance. So that seems – if he said he wasn't giving a loan to the partnership but was just buying the land, that would be inconsistent with that statutory provision. He wasn't just buying the land. I'm – he – Did anyone argue about whether section 16-401E was applicable? I have no recollection of that, Your Honor. Because it seemed as though the district court applied this section to determine there was a partnership and the terms of a part – of the partnership. Okay. I apologize, Your Honor. Okay. Do I think that the judge's findings make a lot of sense in this case? No, I don't. But we're here – we've limited our arguments here to the question of interest. Does California law have anything to say about a partner's contribution to a partner, to the partnership itself, and whether that is deemed to be an interest-bearing loan to the partnership or whether it's a different kind of contribution? Not to my understanding. But it's up – the partners can agree on however they want to do it. And I – and I think that's what California says, is that it's got to be some kind of an agreement. And here, we just don't have a written agreement. Correct. We do not. It's oral. If this had been – if this had been Fox going to Stahl and saying, look, can you loan me some money? I've got a great project going on in Panama, and I'll get you – I'll make sure you get 10 percent interest, it might be on a very different footing. But where the two of them become partners in it, I feel very differently about  And it may just be a visceral reaction, and maybe I can overcome it. But I am left with sort of a visceral reaction that each one of them is bringing something different to the partnership, and that when partners can contribute – make a contribution of money, and another one is contributing labor, that the contribution of money isn't necessarily governed by the same rules as if it was a bank loan. Well, okay. That's a possible way it could have happened, but it didn't happen that way. The understanding of the parties was that Mr. Stahl was going to get 10 percent interest. Now, they could do that. I mean, that's the – But you're taking that out of the context of the whole party's course of conduct. Well, then why would it be a 10 percent fee? Why would he get anything back other than his share of the profits? Because he – because, as Judge Bivey said, they were contributing different things. One was locating the property, finding property of value, building it, developing it, and the other one was financing. Well, Your Honors, if – perhaps if you were making this deal, that's how you would have made it. But that's not what the parties said, and that's not the way they acted. So whether this was the fairest kind of a deal – You're running out of time. Okay. And I think you may have – at least in my mind, and, again, without prejudging, but I question – I'm questioning the ruling that Box was entitled to attorney's fees, because his ultimate goal was to dissolve the partnership, not to further advance the partnership interest. His ultimate goal was to make sure he got his share of the profits out of this deal. That's – that was his – So it was a personal goal as opposed to – That's what he – he was in this for himself. You're absolutely right. That's our argument on the attorney's fees part of it. There's no reason why the other two guys, the partners – they didn't think they were partners, but they turned out to be partners – should have to pay those attorney's fees. Right. But once the district court has found that to be a partnership, you haven't contested that finding. It's clearly erroneous. So in – We're not challenging. In some respects, then, it does seem a little novel here, but Fox's lawsuit is to preserve his rights in the partnership, and for that he's got to establish the partnership. Well, he does, but it's only for his own benefit, not for anybody else's benefit. Nobody – there's only three people involved here, and the other two are not interested in his part of it. He's in there for himself, and his complaint, his cross-complaint, was all about damages for himself. This isn't a derivative lawsuit. It's not a lawsuit on behalf of the partnership against third parties. It's – he's – it's strictly there for himself. I'd like to save my last couple of minutes. All right. Thank you, counsel. Thank you, Your Honor. May it please the Court. Good morning. My name is Glenn Schrost. I'm here with my colleague, Michael Thompson. If I could comment in response to the Court's inquiry on the interest question, what we had here was an agreement under which Mr. Stull would make a capital contribution to the partnership. It was not denominated a loan. There was no note. It was not treated or described in any way as a loan. It was a capital contribution. And we cited at page 10 of our brief what we believe to be the applicable legal standard, which is section 16401A1, which does – which makes no provision for interest on capital account balances. So the only source for added compensation to Mr. Stull would be if there was an agreement amongst the partners for that added compensation. And it was his burden to prove it. Now, the Court found that there was an agreement that he get a 10 percent premium. In essence, his capital account balance would be credited with 110 percent of the amounts advanced. And it also provided that he would have that repaid before profits were calculated. And in that way, he was treated doubly better than my client was treated, Mr. Fox, whose capital account balance not only did not get a premium, but was not given credit in the calculation of profit. So he contributed his capital account balance to the partnership, to the other partners. He contributed his labor without salary. And his only compensation was to receive his share as a partner at the end of the deal. Now, there are some findings by the district court that I think indicate quite clearly that that was the agreement and it's supported by evidence in the record. For example, if we look at page 115 of the excerpts of record, which is the e-mail, contemporary e-mail, I believe October 2008, in which Mr. Fox said, these advances I'm getting of $10,000 per month to cover his expenses are costing me $1,000 a month. That is perfectly consistent with the notion that Mr. Stahl has a right to a 10 percent premium on his capital account balance for that advance. So Mr. Stahl makes an advance of $10,000. His capital account balance is credited with $11,000. So it costs the other partners $1,000 a month for that advance. The court made a specific finding on that. It's at excerpt of record page 11, and it's paragraph 16, little I, where the district court found that Stahl will advance Fox $10,000 per month and will make a similar monthly advance to Beer, who is the third partner, with 110 percent of those amounts to be repaid either from their respective shares of profits or personally if no profits are realized. So the finding is unambiguous, and the evidence supports it. $1,000 a month on $10,000 a month is 10 percent flat. It's not a running interest. If it was running interest, it would be $1,000 a year, not per month. So the evidence does support the court's finding in that respect, and it's simply incorrect to suggest that there's no evidence to support it. It's also quite rational, given this arrangement. In fact, it's generous to Mr. Stahl vis-à-vis the other partners. So can we get to this other question? It seems kind of novel. Yes. Yes, Your Honor. For the benefit to the partnership, there is a specific finding. Excerpt of Record 4, Paragraph 1. The court found as a fact that Mr. Fox benefited the partnership by establishing its existence and asset ownership despite Mr. Stahl's attempts to claim the partnership property as his own. In pursuing that benefit, Mr. Fox incurred attorney's fees to preserve the partnership's business and property, and the preservation of partnership business or property is the language that's in the statute that gives rise to the right. Is that a finding of fact or a conclusion of law? I believe that is a finding of fact. It depends on evidence. Wasn't the conclusion at a legal conclusion as to whether or not it was advancing or furthering the partnership interest? Well, it may be, I suppose, in some sense mixed, but I think it does depend quite strongly on what the evidence was. The evidence in this case was that Mr. Stahl asserted sole dominion and control over the partnership property. He asserted that Mr. Fox was not a partner, that there was no partnership, and that he had the unilateral power to dispose of partnership assets as he saw fit without giving any regard to the rights of the other partners. Now, if this had been a situation where there were only two partners in the partnership, I think the argument would have been stronger that, because it's a zero-sum game between two players, that necessarily Party A, in asserting a partnership interest, is seeking solely to benefit himself at the expense of Party B. But here we have a third partner, Mr. Beer, who had a 15 percent interest. And Mr. Stahl took the same position with respect to Mr. Beer that he took with respect to Mr. Fox and asserted that Mr. Beer also did not have the standing of a partner and that his interests, whatever Mr. Beer's interests might have been, Mr. Stahl did not have to give them any weight in when he made decisions about how to dispose of the partnership assets. That was what this case was about. Now, clearly my client wouldn't have brought the case unless he thought he had been wronged and hoped to achieve a benefit. But the facts that he introduced in the trial and the facts that the district court found were that Mr. Stahl was wrong, that there is in fact a partnership and that my client and Mr. Beer in fact have the rights of partners, that Mr. Stahl owes fiduciary duties to them when he is dealing with partnership assets and they are not his to dispose of as he sees fit in his unilateral decision. That's what this case was about. And when Mr. Fox established those facts, the district court found those facts, it had the effect of confirming the existence of a partnership and the partnership's ownership of substantially valuable property, which until that time was treated as it by the legal title holder of it as if there were no partnership interests that had to be taken into account. Now, yes, my client benefited from that finding. That's why he brought the lawsuit. But the facts that were proven and found are that there was a partnership that was disputed and that the assets in question were the assets of a partnership and not individual assets of a particular partner. Those were important facts. And they fall within the rubric of Section 16401C that gives rise to the statutory right to attorney's fees. All right. Thank you, counsel. Thank you. And I have one quick point on the amount, and I apologize for this. We should have cited this case or a case similar to it in our papers, and we didn't. But I found it in my cleanup work for today's hearing on the amount, and that is the Berrientos case at 583. Could you just write that down and hand it to them? I will. I'll do so, Your Honor. What's the point? But the point is that that case involved a fee request where the challenge on appeal advanced arguments that had not been raised in the district court, and the Ninth Circuit declined to consider those arguments for that reason. So you're saying that the Posting Council did not raise the challenge to the fees based on the non-attorney hours being billed at attorney rates? Yes, Your Honor. The sum total of the argument respecting the amount of the award is at Excerpt of Record, page 54. It's a single paragraph, and it's completely nonspecific. I think we get the point. And you can just write down the case. I will do so. Then if I could turn quickly to the subject of our cross-appeal, which was the district court's decision to ---- That's where we're trying to head you. Let's go. Get to it. I'm slow, but I'll eventually get there. The district court decided not to give my client a remedy against the person who committed the tort of breach of fiduciary duty, which was Mr. Stahl, and instead said that my client had to look exclusively to his partnership distribution at some point in the future to be made whole. And we don't believe that that is sufficient under the law, that the court found as a fact that my client was ---- suffered damages as a result of the breach of fiduciary duty, but declined to give a remedy for that. And we believe that a remand is appropriate so that the district court can consider a damages remedy to be awarded against Mr. Stahl as an individual rather than, in essence, a remedy that's awarded against the partnership as a whole, which my client then has to pay 42.5 percent of, which is, by the way, the same amount that Mr. Stahl pays, in essence. So that's the point of our cross-appeal. And the ---- if I could just point out the findings that are ---- that we believe to be significant, excerpts of Record 20, Paragraph 54. The court found that breach of fiduciary duty required that there be damages. That excerpts of Record page 22, Paragraph 5. Didn't you get your damages in the form of an award of attorney's fees? Isn't that what the judge did here at all? I mean, seriously. He was ---- Well, if it was, it certainly was, you know, not an appropriate measure. For example ---- Let's call it rough justice. Okay. It could have been seen that way, I suppose. Perhaps by this judge. But the ---- for example, the partnership agreement provided that my client would be in charge of sales and marketing of the property. He was ejected from the partnership in March of 2009 and prevented from doing that job. In the three years since, they've sold nothing. The other partners have sold nothing. So the fact that he was ejected has harmed him. He was also ---- he also contributed valuable assets to the partnership. He was given absolutely no credit for that. There could be a rescissionary measure of damages. There are available damages theories, even if one accepts, as we do for purposes of this appeal, that the value of the overall partnership was speculative and the judge, the trial judge did not feel comfortable giving a damage award based on whatever that number might be because there was uncertainty about it. We respect that. We don't agree with it, but we respect that decision. But there are alternative measures of damages. We've discussed some of them in our brief. And we believe that the case should be remanded so that that question can be addressed on the merits by the district court. Thank you. I'll receive the balance. Thank you. Roberts. On the last issue that was just discussed, the trial judge thought about damages and decided not to award them and that they hadn't been proven. And so ---- Well, it was speculative, the value of the land and whether it could be sold and given the economic downturn that was going on. And it's completely speculative. Exactly right. I'd like to point out again on the interest issue that the judge found it was interest. I mean, he said it was interest. So how we turn that into a one-time fee is the question I think that really can't be answered. And it's really incompatible with the whole notion of making a financial contribution to the partnership to then turn around and say, also, you get interest on top of that. So the parties must have meant something else. In terms of taking over the ---- forcing Mr. Fox out of the partnership, the partnership agreement as found by the judge was that Mr. Skull retained control over the overall development. He didn't have to allow Mr. Fox to go ahead and make ---- do whatever he was doing, whatever way he wanted. If there was a partnership and those decisions were to be made by the partnership, the other two partners could have told Mr. Fox that, you know, you're not involved in this anymore. He still gets his share of the profits. He's not entitled to decide how those profits are going to be achieved. That was left by the specific ---- excuse me, the specific findings of the trial judge to Mr. Stahl. That's the deal that these parties entered into. So unless there's any other questions, I'll end it there. Thank you, counsel. Thank you so much. Tell your clients to put it in writing next time. Stealthy Fox will be submitted and we'll take a baker.
judges: Fletcher, Wardlaw, Bybee